IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FORWARD MOMENTUM, LLC, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIV. ACT. NO. 2:17-cv-346-ECM |
| TEAM HEALTH INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Team Health Inc., ("Team Health") and Paragon Contracting Services, LLC's ("Paragon") Motion to Dismiss the Amended Complaint. (Doc. 33). For the reasons stated below, this motion is due to be granted in part and denied in part.

### I. BACKGROUND[1]

The Plaintiffs are independent contractor physicians who work in emergency rooms. Defendant Team Health is a staffing company that, through its subsidiaries such as Defendant Paragon, contracts with physicians to provide emergency care at many hospitals across the country. The Defendants make money based on the number of patients each of its physicians cares for and the services its physicians provide. Thus, the Defendants make more money when its physicians see more patients and provide more care.

---

[1] This recitation of the facts is based upon the Plaintiffs' operative amended complaint, which is presumed to be true for the purposes of this motion. For ease, the Amended Complaint is referenced herein simply as the "Complaint."

Around 2012, the Defendants added a bonus program to its contracts with the physicians to incentivize them to assume additional responsibility during their shifts. This bonus system relies on "relative value units" ("RVUs") to calculate the physicians' bonus. RVUs are based on a similar system initially established by Medicare to help it determine how much to reimburse healthcare providers for services. RVUs assign a value to each service provided. RVUs are generated when physicians directly see patients and, according to the Plaintiffs, RVUs are also generated when physicians supervise physician's assistants and nurse practitioners, also referred to as Advanced-Practice Clinicians ("APCs"). The Plaintiffs claim that these RVUs are referred to as "Assisting RVUs," and allow the Defendants to increase their billing and collections with insurers.

A physician's supervision of APCs may include signing patient charts, even when the physician does not directly treat the patient. The Plaintiffs explain that for some patients, physicians work with the APCs to formulate a diagnosis and treatment plan, and in other cases, the physicians review an APC–created treatment plan. The Plaintiffs further emphasize that by supervising APCs and signing the patients' charts, the physicians are responsible for the patient's treatment, assuming significant responsibility and exposing themselves to liability. Accordingly, the Plaintiffs assert that the Defendants assured the Plaintiffs that they would receive RVU credit generated through their supervision of APCs to compensate for the attendant liability they assume.

The contracts[2] do not explicitly state that the physicians will receive a bonus when they supervise APCs, but they do specify that the physicians will receive "incentive compensation equal to the RVU Multiplier times the applicable Relative Value Unit ("RVU") for the services provided by the Professional." (Doc. 31 at 10). The contracts further obligate the physicians to supervise APCs. The Plaintiffs assert that because the physicians were contractually required to supervise APCs and because that supervision generates an RVU that earns the Defendants additional money, the language of the contract obligates the Defendants to pay the Plaintiffs a bonus for that supervision.

Plaintiffs argue that the individual plaintiff physicians have not been paid the RVUs owed for supervising APCs. The Plaintiffs also allege a class claim and assert that the Defendants admitted that in the Southeast region, it is their policy to not pay physicians for Assisting RVUs. Accordingly, the Plaintiffs bring a class claim for breach of contact (Count I); individual claims for unjust enrichment (Count II); and allege a separate count for declaratory judgment on behalf of both the individual plaintiffs and the class members (Count III).

## II.  LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

---

[2] The Plaintiffs cite from one contract but represent that there are many similar or identical contracts that the physicians signed.

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal.* at 679.

The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

In sum, "[t]he plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556). "Our duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for the plaintiff." *Wilchombe v. Teevee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (quoting *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006)).

### III.  DISCUSSION

**A.  The Plaintiffs plead sufficient facts to support their breach of contract claim.**

The Defendants argue that the Plaintiffs failed to sufficiently plead facts to support all the elements of a breach of contract claim. The elements of a breach of contract claim under Alabama law are: (1) a valid contract binding the parties; (2) the plaintiff's performance; (3) the defendant's nonperformance; and (4) resulting damages. *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)). The current dispute appears to be whether the Defendants were contractually bound to pay a bonus for supervising APCs. Specifically, the Defendants argue that the Plaintiffs must cite an explicit contractual provision that requires the Defendants to provide a bonus for supervisory activities or provide billing codes or Medicare regulations to demonstrate that supervisory activities generate RVUs.

The parties appear to agree that the contract does not explicitly state that the Defendants are required to pay a bonus to the Plaintiffs for supervising APCs, but the Plaintiffs argue that the contract still contemplates payment for such services. Specifically, the contract provides that the company will pay a physician an RVU multiplier "for the services provided by Professional." (Doc. 31 at para. 34). The contract also specifies that the physician "shall provide supervision for" nurse practitioners and physicians assistants. (Doc. 31 at para. 35). In short, Plaintiffs argue that they are entitled to a bonus for the provision of services which generate RVUs, including supervision of APCs. (Doc. 31 at para. 39).

The Defendants admit for the purposes of this motion that "the contract contemplates that the Plaintiffs' bonuses are to be based on RVUs." (Doc. 33 at 9). The Defendants, however, counter that "there is no allegation that Medicare or any other payor

5

recognizes an 'applicable Relative Value Unit' for a physician's supervision of another professional." (Doc. 33 at 10). The Defendants argue that the Plaintiffs assert no facts to support their contention that Medicare assigns an RVU for a physician supervising an APC and that the Plaintiffs should be able to cite rules, regulations, or billing codes to support their allegations that there are RVUs for these supervising activities. (Doc. 33 at 10–11). The Defendants further assert that the Medicare and Medicaid rules, regulations, and billing codes are available to the public, making them readily available for the Plaintiffs. (Doc. 33 at 11). Notably, the Defendants do *not* argue that the Medicare and Medicaid rules fail to provide for an RVU for supervising APCs, but instead argue that the burden is on the Plaintiffs to specifically cite the relevant portions of the regulations.

The Plaintiffs plainly plead that "RVUs are generated when physicians see the patients directly and when they supervise Advanced-Practice Clinicians who treat patients under the physician's direction." (Doc. 31 at para. 7). The Defendants assert that the Court "need not consider such a conclusory allegation" because "[i]f, in fact, supervision of an APC generated an RVU, then Plaintiffs would be able to cite rules, regulations, or billing codes that so provide." (Doc. 37 at 5). However, the Court's sole task at this stage in the proceedings is to determine whether the Plaintiffs' contract claim satisfies the pleading standards. At this point in the proceedings, it is enough that the Plaintiffs allege facts to support their claim that there was a contract and the Defendants breached the contract, causing the Plaintiffs' damages.

Additionally, in their initial motion, the Defendants argue the Plaintiffs "have not alleged that Team Health is a party to these contracts" (doc. 33 at 8) requiring that the

6

contract claim against Team Health be dismissed. In their response, the Plaintiffs point to multiple occasions in the Complaint where they clarify that both the Defendants are parties to the contracts. The Defendants do not address this argument in their reply. The Court agrees that the Plaintiffs sufficiently assert that both the Defendants are parties to the contract. (Doc. 31 at paras. 18, 49, 34).

For the reasons stated above, the Defendants' Motion to Dismiss as to Plaintiffs' breach of contract claim is denied.

**B.      The Plaintiffs' unjust enrichment claim fails because there is a valid, binding contract that governs the parties' employment relationship.**

The Defendants argue that they are entitled to dismissal of Plaintiffs' unjust enrichment claim because the Plaintiffs were required to meet the more strenuous pleading standard for fraud claims under Rule 9 of the Federal Rules of Civil Procedure and because an unjust enrichment claim is not viable when a valid contract covers the same topic. The law is clear that there is no unjust enrichment claim where a contract on the topic governs the relationship.

"The existence of an express contract of a given subject generally excludes an implied agreement on the same subject." *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006) (citing *Vardaman v. Florence City Bd. of Educ.*, 544 So. 2d 962, 965 (Ala. 1989)); *Betts v. McDonald's Corp.*, 567 So. 2d 1252, 1255 ("It has long been recognized in Alabama that the existence of an express contract . . . generally excludes an implied agreement relative to the same subject matter") *overruled on other grounds by White Sands Grp., L.L.C. v. PRS II, LLC,* 32 So. 3d 5 (Ala. 2009). Plaintiffs acknowledge that they

cannot recover under both breach of contract and unjust enrichment but argue that dismissal is premature.

A plaintiff may proceed under both a breach of contract claim, and an unjust enrichment claim on the same subject when the *existence or enforceability of the contract is in dispute*. *See Kennedy v. Polar-Bek & Baker Wildwood Partn.*, 682 So. 2d 443, 446 (Ala. 1996) (holding that the trial court properly submitted both an express contract theory of liability and an implied contract theory to the jury when the terms of the express contract were in dispute); *Camp v. Alabama Telco Credit Union*, No. 2:12-cv-2237, 2013 WL 2106727, at *5 (S.D. Ala. May 13, 2013) (permitting a breach of contract and unjust enrichment claim to proceed where the plaintiffs asserted the contract was unconscionable). Where, however, an express contract exists, and there is no dispute as to its existence and enforceability, courts have not permitted any party to proceed under a theory of law that implies a contract. *See Univalor Trust, SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016) (denying the defendants' motion to amend to add an unjust enrichment counter claim because the defendant pleaded the existence of an express contract, precluding an unjust enrichment claim); *Pearson's Pharmacy, Inc. v. Express Scripts, Inc.*, 505 F. Supp. 2d 1272 (M.D. Ala. 2007) (dismissing constructive trust claims and unjust enrichment claims because a constructive trust is an equitable remedy and an adequate remedy at law precludes the equitable remedy of a constructive trust). In one case, the Alabama Supreme court dismissed a plaintiff's unjust enrichment claim and expressly rejected the plaintiff's argument that dismissal would be premature. *GE Capital Aviation Servs., Inc. v. Pemco World Air Servs., Inc.*, 92 So. 3d 749 (Ala. 2012) (finding

that the lower court erred in submitting the plaintiff's implied contract claim to the jury because the existence of an agreement makes an implied contract theory improper); *see also Selby v. Goodman Mfg. Co.*, No. 2:13-cv-2162, 2014 WL 2740317, at * 5 (N.D. Ala. June 17, 2014) (stating "[i]t is not whether Plaintiff is successful on a breach of contract claim that precludes her unjust enrichment claim, it is the undisputed existence of a contract"); *Wynn v. Davidson Design & Dev., Inc.*, No. 09-0790, 2010 WL 891905 (S.D. Ala. Mar. 8, 2010) (rejecting the plaintiff's argument that he could plead unjust enrichment in the alternative when he conceded there was an express contract on the same subject as the unjust enrichment claim); *Selman v. CitiMortgage., Inc.*, No. 12-0441, 2013 WL 838193, at *13 n.19 (S.D. Ala. Mar. 5, 2013) (acknowledging that claims for breach of contract and implied contract may coexist where the existence of the express contract is in dispute, but dismissing the plaintiffs' unjust enrichment claim because there was no dispute that an enforceable contract existed between the parties).

Here, the Plaintiffs do not dispute the existence of a valid, binding contract governing bonus payments. Accordingly, their unjust enrichment claim cannot survive, and the Defendants' motion to dismiss is granted as to that claim.

### C. The Plaintiffs' class claim survives the Defendants' Motion to Dismiss.

The Defendants argue that the Court should dismiss the Plaintiffs' class claim because they have failed to allege sufficient facts to meet the various requirements for class certification under Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure. The Defendants particularly focus on the Plaintiffs' purported failure to establish commonality and numerosity as required by the rules. The Plaintiffs argue that they have included

9

enough factual allegations to support their class claim and that the Defendants' arguments are premature. The Plaintiffs assert that these arguments are better suited to an opposition to class certification after the Plaintiffs have had the opportunity for discovery. The Court agrees.

Cases cited by the Defendants relate to motions for class certification that were filed ***after*** the plaintiffs had the opportunity to develop a record. *See Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011) (observing that Rule 23 does not set forth a "mere pleading standard," but requires that the plaintiff "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (2009) (reversing the district court's decision to certify a class, citing the lack of a factual record on certain issues and observing that there was no common contract referenced in the complaint); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (reviewing the court's decision to grant a motion for class certification); *Nelson v. U.S. Steel Corp.*, 709 F.2d 675 (11th Cir. 1983) (affirming the district court's decision to decline to certify a class after the court held an evidentiary hearing where the parties could present evidence and testimony and the lawyers could make arguments); *Ritchie v. Mueller Servs. Inc.*, 2013 WL 12095563, at \*\* 4–5 (S.D. Fla. Apr. 19, 2013) (denying the plaintiff's motion for class certification for failing to meet the numerosity requirement, observing that after "extensive discovery" the plaintiff was unable to offer support for her contention that there were many thousands of class members); *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655 (N.D. Ga. 2001) (denying the plaintiffs' motion for class certification based

on a review of the record that the plaintiffs did not meet their burden on the commonality and typicality requirements).

In their complaint, the Plaintiffs allege sufficient facts to survive a motion to dismiss their class claim. Based on the information they have about the number of physician employees, the Plaintiffs assert that there are thousands of potential class members. They further assert that the physicians were required to sign contracts that contained identical or substantially similar language regarding the payment of bonuses. Finally, the Plaintiffs assert that the Defendants admitted that in the Southeast region they have a policy of not paying bonuses for supervising APCs. Thus, at this stage in the litigation, the Plaintiffs have alleged sufficient facts to demonstrate the numerosity and commonality requirements to survive a motion to dismiss their class claim. The Defendants are free to reassert these arguments in their opposition to class certification.

### IV. CONCLUSION

For the reasons discussed, it is ORDERED as follows:

1. the Defendants' Motion to Dismiss Count II, unjust enrichment, is GRANTED and that claim is DISMISSED without prejudice.
2. The Defendants' Motion to Dismiss is DENIED in all other respects.

DONE this 30th day of October, 2019.

                                        /s/ Emily C. Marks  
                                EMILY C. MARKS  
                                CHIEF UNITED STATES DISTRICT JUDGE